UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHELLE M.,

                              Plaintiff,

v.                                                      3:18-CV-1065
                                                        (TWD)
COMM'R OF SOC. SEC.,

                              Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

LACHMAN & GORTON                                PETER A. GORTON, ESQ.
  *Counsel for Plaintiff*
P.O. Box 89
1500 East Main Street
Endicott, NY 13761

U.S. SOCIAL SECURITY ADMIN.                     GRAHAM MORRISON, ESQ.
  *Counsel for Defendant*
OFFICE OF REG'L GEN. COUNSEL
REGION II
26 Federal Plaza - Room 3904
New York, NY 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Michelle M.

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "Commissioner")

pursuant to 42 U.S.C. § 405(g), are Plaintiff's motion for judgment on the pleadings and

Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 10 and 13.)  For the reasons set

forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion

for judgment on the pleadings is granted.  The Commissioner's decision denying Plaintiff's

disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

# I.    RELEVANT BACKGROUND

On April 14, 2015, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning March 9, 2015, due to depression and anxiety.  (Administrative Transcript at 11, 70-71, 202.[1])  She was born in 1968 and reported attending college for four years but she did not obtain a degree.  (T. 52-52, 203.)  She has past work as a branch manager in financial services, procurement clerk, customer service representative, and apartment manager.  (T. 211.)

Plaintiff's application was initially denied on May 5, 2015, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  (T. 70-85.)  She appeared at an administrative hearing before ALJ Jeremy G. Eldred on June 9, 2017.  (T. 105-49.)  On August 11, 2017, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 8-23.)  On August 13, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-7.)

The ALJ's decision followed the Social Security Administration's ("SSA") five-step sequential evaluation process for determining whether an adult is disabled.  (T. 10.)  After finding Plaintiff met the insured status requirements through December 31, 2018, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 9, 2015.  (T. 13.)  At Step Two, the ALJ found Plaintiff's bipolar disorder, panic disorder with agoraphobia, and social anxiety are severe impairments.  (*Id.*)  At Step Three, the ALJ determined Plaintiff's impairments did not meet or medically equal the criteria of any listed

---

[1]  The Administrative Transcript is found at Dkt. No. 9.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

impairments in 20 C.F.R. § 404, Subpart P, App. 1.  (T. 14-15.)  The ALJ found Plaintiff had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels, but can perform only simple, routine tasks, can make only simple work-related decisions, and can do work that requires no more than occasional interaction with supervisors, co-workers, or the public."  (T. 15.)  At Step Four, the ALJ determined Plaintiff was unable to perform any past relevant work.  (T. 18.)  At Step Five, the ALJ found Plaintiff would be able to perform other jobs existing in significant numbers in the national economy.  (T. 18-19.)  Therefore, the ALJ determined Plaintiff had not been under a disability from the alleged onset date of March 9, 2015, through the date of his decision.  (T. 19.)

As noted above, Plaintiff challenges the ALJ's decision.  Specifically, Plaintiff argues the RFC determination is not supported by substantial evidence because the ALJ erred in weighing the opinions of treating psychiatrist Arun Shah, M.D., non-examining State Agency consultant T. Harding, Ph.D., and consultative examiner Mary Ann Moore, Psy.D.  (Dkt. No. 10 at 9-19.)  Plaintiff also contends the ALJ did not properly assess limitations to her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and/or to perform at a consistent pace without an unreasonable number and length of rest periods.  (*Id*. at 19-22.)  Plaintiff also argues the Step Five determination is not supported by substantial evidence because "the ALJ did not use a proper hypothetical resulting in unreliable expert testimony that cannot constitute substantial evidence" and the ALJ used "inaccurate job statistics."  (*Id*. at 22-24.)

Defendant maintains the ALJ properly evaluated the medical evidence of record, properly assessed Plaintiff's concentration, persistence and pace, and properly determined Plaintiff could work at Step Five.  (Dkt. No. 13 at 6-14.)  On reply, Plaintiff reiterates she cannot meet work

pace and/or attendance requirements and that the vocational expert ("VE") did not filter

Occupational Employment Statistics ("OES") job data to accommodate for jobs beyond

Plaintiff's RFC.  (Dkt. No. 14-1 at 1-2.)

## II.    RELEVANT LEGAL STANDARDS

### A.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision.

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v.*

*Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985

(2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts

whether the proper legal standards were applied, even if the decision appears to be supported by

substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the decision.  42

U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the

Court's review, an ALJ must set forth the crucial factors justifying her findings with sufficient

specificity to allow a court to determine whether substantial evidence supports the decision.

*Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582,

587 (2d Cir. 1984).  "Substantial evidence has been defined as 'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'"  *Williams ex rel. Williams v.*

*Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere

scintilla" of evidence scattered throughout the administrative record.  *Featherly*, 793 F. Supp. 2d

at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## B.    Standard for Benefits[2]

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in

_____

[2] The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. DISCUSSION

### A. Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence and Plaintiff's RFC

#### 1. Legal Standards

##### a. RFC

RFC is defined as

what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling 96-8p, 1996 WL 374184, at *2)); *see also Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013); *Babcock v. Berryhill*, No. 5:17-CV-00580 (BKS), 2018 WL

4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a claimant's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. § 404.1545; *see Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris*, 728 F.2d at 588); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### b. Treating Physician

SSA regulations mandate procedures an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion. Recently, the Second Circuit has articulated the procedure as a two-part analysis. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). First, the ALJ must decide whether the opinion is entitled to controlling weight. *See id.* "[T]he opinion of a claimant's treating physician as to the nature and severity of [an] impairment is

given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(2)); *see, e.g.*, *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (holding "the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts").

Second, if the ALJ decides the opinion is not entitled to controlling weight, he must determine how much weight, if any, to give it. *See Estrella*, 925 F.3d at 95. In doing so, the ALJ must "explicitly consider" the following, nonexclusive "*Burgess* factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citing *Burgess*, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2))). In *Estrella*, the court emphasizes the importance of a treating source's opinion in cases concerning mental impairments, as "cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence." *Estrella*, 925 F.3d at 97 (quoting *Garrison v. Colvin*, 759 F. 3d 995, 1017 (9th Cir. 2014)).

At both steps, the ALJ must "give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion." *Id*. at 96 (quoting *Halloran*, 362 F.3d at 32 (brackets in the original)). Notably, an ALJ's failure to "explicitly" apply the *Burgess* factors when assigning weight to a treating physician's opinion is a procedural error. *Id.* (citing *Selian*, 708 F.3d at 419-20). However, if "a searching review of the record"

assures the Court "that the substance of the treating physician rule was not traversed," the Court will nonetheless affirm.  *See id.* (citing *Halloran*, 362 F.3d at 32).

### 2.     Relevant Evidence and the ALJ's Analysis

#### a.     Dr. Moore

In April 2015, Dr. Moore completed a consultative examination and noted Plaintiff reported she was not currently taking any medication.  (T. 280-81.)  Dr. Moore observed Plaintiff was generally cooperative and responsive to questions.  (T. 282.)  She had an adequate manner of relating socially, appropriate eye contact, slightly restless motor behavior, adequate adaptive expressive and receptive language abilities, somewhat rambling thought process, full range of affect, appropriate speech and thought contact, and euthymic mood.  (T. 282.)  Dr. Moore found Plaintiff had intact attention and concentration, intact recent and remote memory skills for the most part (mildly impaired for more remote information, possibly due to some flight of ideas), and fair insight and judgment with bipolar and anxiety.  (T. 283.)

Plaintiff reported she could dress, bathe, and groom but was going four days or so without doing so.  (*Id*.)  She tried to do a little bit of cooking, cleaning and laundry but rarely did so because of her current lack of energy.  (*Id*.)  Plaintiff could shop and manage money but had previous periods of time when she spent it all instead of saving it for bills.  (*Id*.)  She could drive and take public transportation.  (*Id*.)  She also had friends and family to whom she was very close but generally was withdrawn from them and reported a lack of interest in activities.  (*Id*.)

Dr. Moore diagnosed bipolar II disorder without psychotic features, panic disorder without agoraphobia, social anxiety, and alcohol abuse in remission.  (T. 284.)  She opined Plaintiff showed no limitation in following and understanding simple directions and instructions and performing simple tasks independently or maintaining attention and concentration.  (T. 283.)

She also opined Plaintiff showed mild limitation in learning new tasks and performing complex tasks independently and moderate-to-marked limitation in appropriately dealing with stress, relating adequately with others, making appropriate work decisions, and maintaining a regular work schedule.  (T. 283-84.)  Dr. Moore indicated the results of the examination appeared to be consistent with psychiatric issues and might significantly interfere with Plaintiff's ability to function on a daily basis.  (T. 284.)

The ALJ afforded partial weight to Dr. Moore's opinion, noting "it was rendered after a thorough examination of the claimant by a physician with extensive program and professional expertise.  However, the sum of the evidence, including the claimant's high level of daily activity, indicates that she has somewhat greater abilities than those described by Dr. Moore." (T. 17.)  The ALJ explained that because of Plaintiff's close relationships with friends and family and volunteer work and other activities, he considered her "limitations in dealing with stress, relating adequately with others, making appropriate work decisions, and maintaining a regular work schedule moderately, rather than markedly limited."  (T. 17, 283, 312.)

### b.    Dr. Harding

As part of the initial determination in May 2015, State Agency consultant Dr. Harding indicated Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and concentration, persistence or pace, and no repeated episodes of decompensation of extended duration.  (T. 75, 77-79.)  Dr. Harding opined Plaintiff was capable of entry level work in a low contact setting as per the opinion of the consultative examiner.  (T. 75, 78.)  The ALJ afforded this opinion significant weight because "it was rendered by a physician with extensive program and professional expertise."  (T. 17.)  The ALJ indicated the RFC to perform simple work requiring no more than occasional interaction with

others was based on the opinions from Dr. Harding and Dr. Moore, "with the exception of Dr. Moore's opinion that the claimant may have 'marked' limitations in certain functional areas." (T. 18, 284.)

### c.   Dr. Shah

In April 2016, Plaintiff's treating psychiatrist Dr. Shah indicated Plaintiff was not able to continue working even part time. (T. 298.) In July 2017, Dr. Shah noted Plaintiff's bipolar disorder, panic with agoraphobia, and past substance abuse. (T. 349.) Dr. Shah opined Plaintiff had medium limitations in maintaining attention and concentration, accepting instructions and responding appropriately to criticism from supervisors, and getting along with coworkers. (T. 348.) She opined Plaintiff had marked limitations in performing activities within a schedule, maintaining regular attendance, and/or being punctual within customary tolerances, interacting appropriately with the general public, and responding appropriately to ordinary stressors in a work setting with simple tasks. (T. 348.) Dr. Shah also indicated Plaintiff would be off-task more than 33 percent of the day and absent three or more days per month. (T. 349.) Dr. Shah noted these limitations had been present since April 2016. (T. 350.)

The ALJ afforded little weight to Dr. Shah's April 2016 opinion "because it addressed a conclusion reserved to the Commissioner" and Plaintiff's daily activities did not support this conclusion. (T. 17, 298.) The ALJ also gave little weight to Dr. Shah's July 2017 assessment "as limitations set forth in this report are not supported by references to any clinical findings. They are also inconsistent with the mental status examination findings and daily activities[.]" (T. 17, 347-50.)

### 3. Analysis

As noted above, Plaintiff argues the RFC determination is not supported by substantial evidence because the ALJ erred in weighing the opinion evidence and did not properly assess her limitations. (Dkt. No. 10 at 9-19; Dkt. No. 14-1 at 1-2.) The Court finds these arguments unpersuasive.

First, the ALJ's decision indicates a thorough review of the evidence with analysis supported by that evidence. (T. 13-19.) For example, the ALJ explained he found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (T. 16, 280-85, 298-315.) Specifically, the ALJ indicated objective evidence in the record failed to support the level of severity alleged by Plaintiff including the consultative examination, Plaintiff's mental health treatment notes, and Plaintiff's self-described daily activities. (T. 16, 223, 224, 225, 283, 298-315.)

Further, in determining Plaintiff's RFC, the ALJ cited to objective evidence including the April 2015 psychiatric consultative examination which indicated Plaintiff was not engaged in any ongoing or regular mental health treatment and she was not taking any psychiatric medications. (T. 16, 280-85.) Throughout his decision, the ALJ noted Plaintiff's attention, concentration, and memory skills were intact during the consultative examination and Dr. Moore noted Plaintiff's cooperation, responsiveness to questions, average cognitive functioning, appropriate fund of information, and close relationships with friends and family "despite a tendency to become withdrawn." (T. 14, 16, 280-86.) The ALJ also noted recent mental health treatment notes consistently stated Plaintiff's insight and judgment were fair and described her as coherent and cooperative with an appropriate affect. (T. 318-46.) The ALJ pointed to medical

records from February 2017 indicating Plaintiff volunteered at a dog shelter and did other things to stay busy. (T. 14-15, 312, 314.) The ALJ also noted Plaintiff's testimony that she was capable of performing many activities requiring the ability to concentrate, persist, and maintain pace including driving, cleaning, doing laundry, cooking, and shopping. (T. 14, 58, 223, 224, 225, 312, 314.)

The ALJ noted Plaintiff entered treatment with Dr. Shah in April 2016 and a treatment note indicated she was alert and oriented, coherent, relevant, and cooperative with normal speech, mostly neutral mood, appropriate affect, good attention and concentration, and good insight and judgment. (T. 16, 298.) The ALJ also noted Plaintiff indicated she was happy with her medication regimen and subsequent examinations continued to show her symptoms had been well-managed with medication. (T. 16, 56, 298-317.) The ALJ also pointed to Plaintiff's daily activities including some cooking, cleaning, laundry, shopping, managing finances, driving, using public transportation, reading, and volunteering at a dog shelter. (T. 16-17, 35, 52, 58, 223, 224, 225, 283, 312, 314.) The ALJ indicated these activities required "many of the same functions that the claimant alleges she is unable to perform in a work setting." (T. 17.)

The Court's review of the record supports the ALJ's analysis. For example, while Plaintiff's therapist indicated Plaintiff was still struggling and dealing with the highs and lows of her conditions as well as her fears and phobias, her concurrent mental health treatment notes from Dr. Shah in 2017 indicate she was doing well on medication with her condition described as good, stable, and baseline. (T. 310, 312, 314, 318-46.) The ALJ's analysis is also supported by Plaintiff's generally benign presentation at the consultative examination with Dr. Moore, which the Court notes was at a time when Plaintiff was not taking medication for her mental impairments. (T. 280-86.)

Second, the ALJ's analysis of the opinion evidence is supported by substantial evidence in that he accurately discussed the opinions and provided sufficient reasons for the weight given to each opinion.  (T. 17-18, 75, 77-79, 280-86, 298, 347-50.)  Contrary to Plaintiff's arguments, the ALJ provided reasonable explanations for rejecting Dr. Shah's opinion and a portion of Dr. Moore's consultative opinion indicating marked limitation in some areas of functioning while relying on the remainder of Dr. Moore's opinion and Dr. Harding's opinion.  (T. 17-18; Dkt. No. 10 at 9-19.)  The ALJ was also not required to adhere to the entirety of Dr. Moore's opinion when formulating Plaintiff's RFC and rather provided for the limitations within that opinion which he concluded were supported by the other evidence of record.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Zongos v. Colvin*, No. 12-CV-1007 (GLS/ESH), 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).

Further, the ALJ was entitled to rely on Dr. Harding's opinion as a non-examining State Agency medical consultant because such consultants are considered qualified experts in the field of social security.  *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, No. 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.

As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

The ALJ's analysis also reflects proper consideration of the regulatory factors in weighing treating and non-treating opinions from both examining and non-examining sources. (T. 15-18.) For example, the ALJ acknowledged the program and professional expertise of Drs. Harding and Moore and also identified Dr. Shah as Plaintiff's treating source beginning in April 2016 while weighing the consistency of these opinions with the other evidence of record. (T. 17.) *See Rusin v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018) ("The ALJ did not err in declining to afford [plaintiff's treating psychiatrist] controlling weight because his opinion is inconsistent with his treatment notes and diagnostic observations, the other medical opinion evidence, and [plaintiff's] reported activities of daily living.") (other citations omitted); *Monroe v. Comm'r of Soc. Sec.*, 676 Fed. App'x 5, 7 (2d Cir. 2017) (ALJ's decision to give less than controlling weight to treating physician's opinion was proper where "his treatment notes contradicted his RFC assessment"); *Trimm v. Comm'r of Soc. Sec.*, No. 7:15-CV-1006 (GTS/WBC), 2016 WL 7414531, at *10 (N.D.N.Y. Dec. 2, 2016) ("Overall, the ALJ did not err in failing to afford controlling weight to the opinions of [plaintiff's treating physicians] because the opinions were inconsistent with other substantial evidence in the case record. The opinions were not supported by the physician's own treatment notations which indicated normal mental status examinations[.]"), *report-recommendation adopted by* 2016 WL 7409060 (N.D.N.Y. Dec. 22, 2016); *see, e.g.*, *Sabrina H. v. Comm'r of Soc. Sec.*, No. 5:18-CV-730 (ATB), 2019 WL 4081330, at *7 (N.D.N.Y. Aug. 29, 2019) (ALJ's decision to give "little weight" to treating psychiatrist's opinion was supported by substantial evidence and did not violate the treating

physician rule where the doctor consistently reported only "moderate" symptoms despite also containing reports of "ups and downs in" the plaintiff's mood).

In sum, a "searching review of the record" assures the Court "that the substance of the treating physician rule was not traversed," *Estrella*, 925 F.3d at 96, and the ALJ's decision demonstrates adequate consideration of the regulatory factors in weighing and affording little weight to Dr. Shah's opinion. *See* 20 C.F.R. § 404.1527(c)(2).

Finally, the Court is not persuaded by Plaintiff's arguments regarding her ability to complete a normal workday/workweek and/or to perform at a consistent pace without an unreasonable number and length of rest periods. (Dkt. No. 10 at 19-22.) As indicated above, the ALJ properly considered and weighed the evidence of record to determine what limitations were supported. (T. 13-18.) Plaintiff has not established further limitations than those included in the ALJ's RFC and the Court's review of the record does not support such further limitations as those argued by Plaintiff. (Dkt. No. 10 at 19-22.)

The Court notes it was within the ALJ's purview to weigh the evidence of record, resolve any inconsistencies therein, and make a determination consistent with the evidence as a whole. *See Bliss v. Colvin*, No. 13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Petell v. Comm'r of Soc. Sec.*, No. 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."). The Court will not now reweigh that evidence. *See Warren v. Comm'r of Soc. Sec.*, No. 15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not

disabled, the Court 'will not reweigh the evidence presented at the administrative hearing . . . nor will it determine whether [the applicant] actually was disabled.  [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996)), *report-recommendation adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)); *Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (noting it is not the role of a court to "re-weigh evidence" because "a reviewing court 'defers to the Commissioner's resolution of conflicting evidence' where that resolution is supported by substantial evidence") (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citing *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009))).

For the reasons stated above, the Court finds the ALJ's analysis of Plaintiff's RFC and the medical opinions is supported by substantial evidence.  Remand is therefore not required on these bases.

**B.**     **The ALJ's Step Five Determination is Supported by Substantial Evidence**

The burden shifts to the Commissioner at Step Five "to show there is other work that [the claimant] can perform."  *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)).  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved."  *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983)

17

and citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)). "If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 211 (July 7, 2009) (citing *Melligan v. Chater*, No. 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

Here, the ALJ relied on VE testimony in finding Plaintiff can perform jobs existing in significant numbers in the national economy including linen room attendant, photocopy machine operator, and semi-conductor bonder. (T. 18-19, 64-65.) At the administrative hearing, the ALJ asked the VE a hypothetical question mirroring the RFC limitations. (T. 64-65.) The VE also testified the job numbers provided were primarily OES data which he accessed using two proprietary programs including Job Browser Pro. (T. 68.)

As noted above, Plaintiff argues the Step Five determination is not supported by substantial evidence because the ALJ did not use a proper hypothetical when questioning the VE and the VE did not filter OES job data, leaving the ALJ to rely on inaccurate job statistics. (Dkt. No. 10 at 22-24; Dkt. No. 14-1 at 1-2.) The Court finds these arguments unpersuasive.

First, as indicated in Part III.A., *supra*, the Court finds the ALJ properly determined Plaintiff's RFC. (T. 15.) Because the hypothetical question posed to the VE reflected the ALJ's RFC determination and Plaintiff has not established further limitations, the Court finds the testimony provided by the VE in response to the hypothetical constitutes substantial evidence to support the ALJ's Step Five determination. (T. 15, 18-19, 64-65.)

Second, the Court finds the VE's testimony established jobs existing in significant numbers that a person with Plaintiff's RFC could perform. (Dkt. Nos. 10 at 22-24; Dkt. No. 14-1 at 1-2.) The Second Circuit has acknowledged that because the job codes in the Dictionary of

18

Occupational Titles ("DOT") "do not report the number of available jobs in the national economy, VEs 'must obtain additional information to assess whether positions exist for the occupations disability claimants can still perform.'" *Walker v. Colvin*, No. 15-CV-0465 (CFH), 2016 WL 4768806, at *7 (N.D.N.Y. Sept. 13, 2016) (quoting *Vandermark v. Colvin*, No. 13-CV-1467 (GLS/ESH), 2015 WL 1097391, at *10 (N.D.N.Y. Mar. 11, 2015) and citing *Brault*, 683 F.3d at 446). In *Brault*, the Second Circuit also noted "the marked absence of any applicable regulation or decision of this Court requiring a vocational expert to identify with greater specificity the source of his figures or to provide supporting documentation" and concluded "[t]he ALJ did not need to find specific numbers of jobs – all he was required to do was find that 'substantial' positions exist." *Brault*, 683 F.3d at 450, n.6.

Here, the ALJ asked the VE the source of his job numbers, to which he replied the job numbers were "primarily OES data" accessed via two proprietary programs. (T. 68.) No further questions regarding the number of jobs or the source of the job numbers were asked by the ALJ or Plaintiff's representative. (*Id.*) However, as Defendant points out, even if the data provided by the VE came from OES job groups rather than the three specific DOT job titles, the "VE still demonstrated a significant number of jobs would have existed in the national economy" with a total of 107,230 jobs between these three occupations. (Dkt. No. 13 at 13-14.) Further, the RFC here lends itself to a broad range of jobs in light of the indication Plaintiff can perform a full range of work at all exertional levels with some mental limitations. (T. 15.) Because the VE testimony still indicated jobs existed in significant numbers, the Court finds any error regarding the source or specificity of the job statistics to be harmless.

Therefore, the Court finds the ALJ's Step Five determination is supported by substantial evidence. Remand in not required on this basis.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is

**GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is

**AFFIRMED**, and it is further

**ORDERED** that Plaintiff's Complaint is **DISMISSED**.


Dated: January 30, 2020
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge